**Victoria PIETRAS, Plaintiff–Appellee,**

v.

**BOARD OF FIRE COMMISSIONERS OF THE FARMINGVILLE FIRE DISTRICT, Defendant–Appellant.**

**Nos. 98–7334(L), 98–7486(XAP).**

United States Court of Appeals, Second Circuit.

Argued May 25, 1999.

Decided June 18, 1999.

Vincent R. Fontana, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, New York, NY, for Defendant–Appellant.

Richard Hamburger, Hamburger, Maxson & Yaffe, LLP, Melville, N.Y. (Lane T. Maxson, on the brief), for Plaintiff–Appellee.

Lisa Wilson Edwards, United States Department of Justice, Washington, DC (Bill Lann Lee, Acting Assistant Attorney General, C. Gregory Stewart, General Counsel, Phillip B. Sklover, Associate General Counsel, Carolyn L. Wheeler, Assistant General Counsel, Dennis J. Dimsey, Geoffrey L. Carter, Equal Employment Opportunity Commission, Washington, DC, on the brief), for Amici Curiae The Equal Employment Opportunity Commission and the United States.

Before: VAN GRAAFEILAND, CALABRESI, and STRAUB, Circuit Judges.

CALABRESI, Circuit Judge:

Following a bench trial, defendant-appellant Board of Fire Commissioners of the Farmingville Fire District ("Farmingville") appeals from a judgment of the United States District Court for the Eastern District of New York (Denis R. Hurley, *Judge* ). The district court found that Farmingville's physical agility test ("PAT"), which all probationary volunteer firefighters were required to pass in order to become full-fledged volunteer firefighters, had a disparate impact on women. Accordingly, the court granted injunctive relief to plaintiff-appellee Victoria Pietras, a female probationary firefighter who had been terminated by Farmingville for her repeated failure to pass the PAT. The injunction reinstated her as a probationary firefighter but permitted Farmingville to develop and administer a non-discriminatory PAT as a precondition to her becoming a full-fledged volunteer member. We affirm.

## BACKGROUND

Farmingville is the governing body of a volunteer fire department that has approx-

imately 100 members. Pietras was a probationary (i.e. trainee) firefighter in the Farmingville Department. Even as a probationary volunteer, Pietras was entitled to numerous firefighter benefits under state law and the by-laws of the department. These included: (1) a retirement pension, (2) life insurance, (3) death benefits, (4) disability insurance, and (5) some medical benefits.

Before Pietras could become a full member of the department, however, she and all other probationary volunteers were required to pass a newly instituted PAT.[1] The PAT consisted a series of physical tasks that the applicants had to complete within a specified time limit. The most difficult of these nine labors was the "charged hose drag," which involved dragging a water-filled hose—weighing approximately 280 pounds—over a distance of 150 feet.

To determine the appropriate time limit for the PAT, Farmingville officials asked various members of the department to take the test. Forty-four firefighters participated in these trials. Of the 44 test-takers, 33 were males who served as full firefighters, 6 were male probationary members, 3 were male junior members,[2] one was Jeanine Serpe, a female full firefighter, and one was Pietras. The average times of these subgroups were:

| Sample Pool | Average Time |
| --- | --- |
| Full Males (33) | 3:12 |
| Probationary Males (6) | 2:47 |
| Junior Males (3) | 2:52 |
| Full Female (Jeannine Serpe) | 5:30 |
| Probationary Female (Pietras) | 5:21 |

From these results, Farmingville set four minutes as the time within which the labors had to be completed. The four minute threshold was determined by tak-ing the average of all the (mostly male) test runs (approximately 3:30) and then adding an extra half-minute "to have some leeway." There was some concern expressed at a 1993 Farmingville Board meeting that neither Serpe nor Pietras had been able to finish the PAT in anything close to four minutes, but Farmingville nevertheless instituted the four minute cut-off.

Following the implementation of the PAT, Pietras tried and failed the test twice. During this same period, six other female probationary firefighters took the test. Four of these women completed the PAT in under four minutes and therefore passed. One woman failed to complete the test for an unknown reason. And one woman did not complete the test despite repeated efforts to drag the water-filled hose over the required distance. All of the 24 male probationary volunteers who took the test at about this time passed.

Following her second failure to pass the PAT, Pietras was fired from her volunteer position at Farmingville. Shortly thereafter, she filed a charge of sex discrimination with the New York Division of Human Rights and asked that it be forwarded to the Equal Employment Opportunity Commission ("EEOC"). She did this in order to get a notice-of-right-to-sue letter from the EEOC. The Division of Human Rights, however, returned the charge to her on the ground that, as a volunteer, Pietras was not an employee and hence not eligible for federal relief.[3] Pietras then filed suit in district court, alleging that Farmingville had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e to 2000e–17 (1994), and state law.[4]

---

1. Pietras passed both a medical exam and a written exam that were also preconditions to becoming a full firefighter.

2. Junior membership is open to the sons of active firefighters who have reached the age of 16 but have not yet fulfilled the requirements to be a full firefighter. *See* Farmingville Fire Department By–Laws, art. IV, § 4.

3. The EEOC, as *amicus curiae,* now argues that Pietras is an employee under Title VII.

4. Pietras brought both a disparate treatment and a disparate impact claim under Title VII.

The district court (Wexler, *J.*) dismissed all of Pietras' causes of action except for her Title VII disparate impact suit. At that point, the case was transferred to Judge Hurley. He held a bench trial that focused exclusively on Pietras' disparate impact claim, and specifically on the bases for Farmingville's decision to make four minutes the cutoff time for passing the PAT.

At trial, Farmingville raised numerous questions about the validity of Pietras' claim that the PAT's four-minute limit had a disparate impact on women. First, Jeannine Serpe testified that when she took and completed the PAT—in well over four minutes—she was "instructed to walk through the course" and therefore her time was not an accurate reflection of how women did on the test. Second, Farmingville insisted that the two women who had started but had failed to complete the test should not be counted in any statistical analysis of the female pass rate. Finally, the department insisted that the PAT's four-minute threshold was a job-related criterion.

Pietras traversed these arguments and also presented testimony from Dr. Robert Otto, an expert exercise physiologist. Dr. Otto conducted an extensive review of the physical agility tests administered by various volunteer and paid fire departments and concluded (a) that the four minute limit in the Farmingville test had a disparate impact on women, and (b) that it was not job related.

■ After reviewing the evidence, the district court ruled for Pietras. First, the court found that Jeannine Serpe's testimony that she had "walked" through the PAT was not credible. Second, the court determined that the female probationary volunteer who quit the PAT for unknown rea-

sons should not be counted in a statistical analysis of the test results, but that the woman who failed to complete the test despite her best efforts should be counted. Third, the court concluded that "the record is bereft of any evidence" that a four minute time-limit to finish the PAT was job-related.[5]

In support of its finding of disparate impact, the court noted that the male pass rate on the PAT was 95% (63 out of 66) while the female pass rate was only 57% (4 out of 7). Relying on the "four-fifths" rule set forth in the EEOC Guidelines, the court reasoned that "a pass rate for women which is less [than] four-fifths (or 80%) of the pass rate for men typically signifies disparate impact sufficient to establish a *prima facie* case.... Therefore, the gender imbalance [in this case] more than satisfies the 80% standard." This statistical evidence (which was corroborated by Dr. Otto's testimony concerning the effect of the PAT on women) was deemed by the district court to be enough to establish disparate impact.

Farmingville appeals.

## DISCUSSION

■ After a bench trial, we review a district court's legal conclusions *de novo* and its factual findings for clear error. *See Herman v. RSR Security Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999).

### A. *Jurisdictional Challenges*

■ Farmingville's first contention is that the district court lacked subject-matter jurisdiction over this case. This jurisdictional challenge is based on the grounds (1) that Pietras was not an "employee" of the fire department as that term is defined

5. It is not clear whether Farmingville is appealing this ruling. Assuming *arguendo* that Farmingville is challenging this aspect of the district court's decision, that appeal is without merit. The burden of showing that a test that has a disparate impact is job-related is with the department. But, as the district

court pointed out, there is no evidence at all to indicate that the time chosen for the test reflected the needs of the job. In fact, the record makes clear that Farmingville selected the four-minute figure simply by taking the average of all the test scores and then arbitrarily adding some extra time.

in Title VII, and (2) that Pietras did not obtain a notice-of-right-to-sue letter from the EEOC before bringing the instant action. We reject both arguments.

Title VII defines an employee, unhelpfully, as "an individual employed by an employer." 42 U.S.C. § 2000e(f) (1994). Courts have assumed, however, that in using the term employee Congress had in mind "the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). Within that framework, we have stated that the question of whether someone is or is not an employee under Title VII usually turns on whether he or she has received "direct or indirect remuneration" from the alleged employer. *See O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir.1997), *cert. denied* —— U.S. ——, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998).

Farmingville asserts that, under the remuneration test set forth in *O'Connor*, Pietras was not an employee of the fire department because she was not paid a salary. But in *O'Connor* we stated that the plaintiff was not an employee because she had received no salary or "employee benefits such as health insurance, vacation, or sick pay, nor was she promised any." *Id.* We expressly added that, in this regard, O'Connor's situation was different from the one in *Haavistola v. Community Fire Co.*, 6 F.3d 211 (4th Cir.1993). *See O'Connor*, 126 F.3d at 116. *Haavistola* had held that where a volunteer firefighter received "indirect but significant remuneration" through benefits such as a disability pension, survivors' benefits, group life insurance, and scholarships for dependents upon death, a reasonable factfinder could decide that an employment relationship

under Title VII existed between the firefighter and her department. *Id.* (quoting *Haavistola*, 6 F.3d at 221–22).

 Given our discussion of *Haavistola* in *O'Connor*, we think it is clear that an employment relationship within the scope of Title VII can exist even when the putative employee receives no salary so long as he or she gets numerous job-related benefits. In this case, Pietras received benefits under state law that were considerably more generous than the benefits received by the plaintiff in *Haavistola*.[6] *See generally* N.Y. Volunteer Firefighters' Benefit Law §§ 5–25 (McKinney 1988 & Supp.1999). We conclude, in accord with *Haavistola*, that a non-salaried volunteer firefighter's employment status under Title VII is a fact question when that firefighter is entitled to significant benefits. And we cannot say that the district court clearly erred in its finding that Pietras was, on this basis, an employee of the Farmingville department.[7]

 Farmingville also contends that Pietras' suit is jurisdictionally barred because she did not obtain a notice-of-right-to-sue letter from the EEOC. Title VII requires that plaintiffs file timely a charge with EEOC. *See* 42 U.S.C § 2000e–5(f). If no civil suit is filed by the EEOC or its authorized agent within 180 days of the filing of the charge, then the EEOC must notify the plaintiff by letter. *See id.* § 2000e–5(f)(1); 29 C.F.R. § 1601.28 (1994). After receiving such a "notice-of-right-to-sue" letter, a plaintiff can bring a civil action against his or her employer. *See* 42 U.S.C. § 2000e–5(f)(3); 29 C.F.R. 1601.28(e)(1).

 The EEOC refused to provide Pietras with a notice-of-right-to-sue letter,

6. For example, Pietras was entitled to a retirement pension, whereas Haavistola was only entitled to a disability pension.

7. We also reject Farmingville's related argument that it was not an "employer" pursuant to Title VII. Employers must have 15 or more employees to come under the statute. *See* 42

U.S.C. § 2000e(b). Since we have upheld the district court's determination that volunteer firefighters at Farmingville are employees, and the department has more than 15 of these volunteers, it follows that Farmingville is an employer for purposes of Title VII.

and Farmingville argues that this fact suffices to bar Pietras from bringing the instant case. We disagree. The Supreme Court has stated that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Every circuit before us that has faced the question has held that a plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court. *See, e.g., Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031 (6th Cir.1998); *McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 505 (1st. Cir.1996); *Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 358 (3d Cir.1984). We agree with these holdings and find no jurisdictional bar to this Title VII action.

Farmingville contends, however, that even if there is no *jurisdictional* bar the district court erred by granting Pietras a waiver for her failure to obtain an EEOC letter. We disagree. Given that Pietras made a diligent effort to obtain a notice-of-right-to-sue letter from the EEOC and was denied one on the erroneous basis that she was not an employee, we believe that the district court acted well within its discretion by excusing the absence of such a letter in this case.

### B. *Disparate Impact*

Farmingville asserts that, even if the case was properly before the district court, the judgment below should be reversed because several of the court's factual findings were clearly erroneous. We address each of these contentions in turn.

■ First, Farmingville argues that Jeanine Serpe should not have been counted in the sample of the seven women who took the PAT. Farmingville bases this assertion on the facts (1) that Serpe testified that she only "walked through" the test, and (2) that she was already a full firefighter when she took the PAT and therefore should not have been included in a sample pool evaluating the impact of the test on probationary firefighters. But, with respect to Serpe's testimony that she did not try on the PAT, we will not disturb the determination of the district judge—who observed her testimony—that she was not credible. And, although Serpe was not a probationary firefighter, we find no error in the district court's inclusion of Serpe in the sample. The statistical analysis of the PAT results was designed to evaluate the impact of the test on women generally, and not merely on women who were probationary firefighters.

■ Farmingville's next contention is that the district court clearly erred by including in the sample the woman who tried but failed, in spite of her best efforts, to complete the test. In Farmingville's view, this woman should have been treated as having withdrawn voluntarily from the PAT. We find this unpersuasive. The district court reasonably concluded that the abandonment of the PAT by a participant who had tried but had been unable to complete the test (due to its difficulty) "may not be deemed a voluntary withdrawal. Instead, it represents a 'failure' for disparate impact purposes."

■ Next, Farmingville asserts that, even if the statistical figures before the district court were correct, a sample of seven female test-takers is simply too small to support a disparate impact finding. We have previously considered the EEOC's four-fifths rule for determining whether statistical evidence gives rise to an inference of disparate impact. *See Guardians Ass'n v. Civil Serv. Comm'n*, 630 F.2d 79, 88 (2d Cir.1980). Under this rule, a pass rate for women that is less than 80% of the pass rate for men constitutes *prima facie* evidence of disparate impact. *See* 29 C.F.R. § 1607.4(D) (1998). In the instant case, as the district court

found, the PAT pass rate for women (57%) was less than 80% of the pass rate for men (95%). The court therefore drew an inference of disparate impact.

There is, however, authority holding that a disparate impact finding based solely on a sample as small as the one presented here cannot stand. *See Fudge v. City of Providence Fire Dep't*, 766 F.2d 650, 658–59 & n. 10 (1st Cir.1985) (holding that sample of 24 people is too small to support an inference of disparate impact based *purely* on a statistical analysis).[8] In the case before us, however, Pietras presented more than just statistics. After conducting an exhaustive analysis of the practices of other fire departments, Dr. Otto provided expert testimony on the disparate impact of Farmingville's PAT. This expert testimony, combined with the statistics Pietras did present, comfortably tips the scales in favor of the district court's finding of disparate impact. *See Boston Police Superior Officers Fed'n v. City of Boston*, 147 F.3d 13, 22 (1st Cir.1998) (holding that a small statistical sample plus expert testimony can support a finding of disparate impact); *Fudge*, 766 F.2d at 659 (Breyer, J., concurring) (stating that expert testimony would be highly relevant to a disparate impact analysis when the statistical evidence is inconclusive). Accordingly, we reject Farmingville's challenge to the district court's analysis.

Because the district court did not clearly err in finding (1) that Pietras was an employee of Farmingville, (2) that she was subjected to a test that was not work-related, and (3) that the test had a disparate impact on women, we affirm its judgment.

---

**8.** To counter this authority, the EEOC urges us—for the first time on appeal—to analyze the PAT statistics using the so-called Fisher's Exact Test, which is designed for small samples. But, since we can affirm the district court without relying on that test, we need not and do not express any view on its merits.