Filed 10/16/13  Enriquez v. City of Sierra Madre CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KAILYN ENRIQUEZ,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>CITY OF SIERRA MADRE,<br><br>  Defendant and Respondent. | B240916<br><br>(Los Angeles County<br>Super. Ct. No. GC048115) |

        APPEAL from an order of the Superior Court of Los Angeles County, Joseph F. De Vanon, Judge.  Affirmed.

        Ernster Law Offices, John H. Ernster and Elizabeth A. Ernster for Plaintiff and Appellant.

        Kessel & Associates, Elizabeth M. Kessel, Alexis N. Cirkinyan and James H. Demerjian for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff Kailyn Enriquez appeals from an order of dismissal entered after the trial court sustained defendant City of Sierra Madre's demurrer to her first amended complaint without leave to amend.[1]  We affirm.

# FACTS

On October 13, 2007 Enriquez applied for a position as a firefighter for the Sierra Madre Fire Department (SMFD), after completing her firefighter training in July 2007.  On January 28, 2008 City of Sierra Madre City Manager Elaine Aguilar and SMFD Chief Stephen Heydorff appointed Enriquez to work as a probationary volunteer firefighter for the SMFD.  Enriquez eventually completed her probationary period as a volunteer firefighter.

The City hires and fires volunteer firefighters, sets the rules and regulations for their work, requires them to work specific shifts and to arrive on time, and requires them to report to supervisors and to work within the framework of the SMFD.  Volunteer firefighters also receive training and are covered by workers' compensation.  The City keeps records of the volunteer firefighters' service.  It pays volunteer firefighters a stipend of $1 per day, paid every 90 days.  It also pays voluntary firefighters

---

[1]  Enriquez purports to appeal from an order entered on March 27, 2012, the filing date of the notice of entry of order of dismissal.  Because she unquestionably intended to appeal from the order of dismissal, we construe her notice of appeal as from that appealable order, rather than the notice of entry. (See *In re Marriage of Macfarlane & Lang* (1992) 8 Cal.App.4th 247, 252-253; Cal. Rules of Court, rule 8.100(a)(2) ["notice of appeal must be liberally construed"]; see also *In re the Marriage of Kerry* (1984) 158 Cal.App.3d 456, 460, fn. 1 ["notice of appeal which incorrectly designates a judgment instead of an order after an appealable judgment may be construed as an appeal from the order after judgment, when respondent is not misled"].)

approximately $33 per day when "hired out" with a SMFD strike team of firefighters sent to assist other agencies in fighting non-local large-scale fires.

On April 10, 2008 Enriquez began the background check procedure required for employment by the Sierra Madre Police Department (SMPD). After learning that she had been accepted to the training program for employment in the SMPD dispatch office, she resigned from her other job with FirstMed Ambulance. She submitted to a polygraph test in early May, was fingerprinted, and underwent a psychological examination in early June in anticipation of her employment with the SMPD.

Meanwhile, Enriquez had witnessed incidents that several firefighters in the SMFD claimed involved sexual harassment. The SMFD scheduled a mandatory interview for Enriquez on June 24, 2008 regarding these incidents. She was unable to attend the interview at that time, however, because the SMFD sent her out with a strike team. The SMFD rescheduled the interview for July 14.

Enriquez was scheduled to begin her training in the SMPD on June 30, 2008, but she obtained permission to reschedule her start date because she was still serving on the SMFD strike team. Enriquez picked up her police department uniform on July 14. On August 1 Enriquez received a phone call from SMPD Chief Marilyn Diaz, who stated the police department was putting Enriquez's employment on hold pending resolution of issues regarding Enriquez's status with the SMFD.

On August 2, 2008 the SMFD issued Enriquez a disciplinary notice that wrongly accused her of ignoring an admonishment not to discuss her interview or the investigation with anyone but her "authorized representative." The notice stated that she had created an uncomfortable working environment by discussing the incidents with City staff. The notice stated that Enriquez was "[d]ishonest, [d]isobedient; [took a]ctions that adversely affected the safety of employees or others; . . . [engaged in h]arassment of fellow employees; [and engaged in v]iolation of any city policy."

On August 22, 2008 Enriquez wrote a memorandum to the city manager pointing out the errors and inconsistencies in the disciplinary notice. She also stated that she had been singled out to receive a disciplinary notice. She said that she did not want an

unwarranted disciplinary notice in her file to adversely affect her future employment. The City refused to remove the disciplinary notice.

Enriquez's prospective employment with the SMPD, originally scheduled to begin August 4, 2008, was postponed initially for six months and then indefinitely. The SMPD ultimately withdrew its employment offer "as a result of the Disciplinary Notice and subsequent action."

At the end of 2009 Captain Kristine Lowe of the SMFD informed Enriquez via Facebook message that the SMFD was placing Enriquez on leave from her position as volunteer firefighter because she had not yet obtained her Emergency Medical Technician certification/accreditation (EMT certification). On January 1, 2010 Enriquez went on voluntary indefinite leave.

On February 10, 2010 Enriquez received a memorandum by certified mail from the City stating that she did not have a valid California EMT certification, as required by a policy adopted by the SMFD prior to July 1, 2008. The memorandum stated that Enriquez had to obtain the certification by March 1, 2010. The SMFD placed her on administrative leave and notified her that she would be suspended and subject to disciplinary action if she did not obtain certification by March 1. Enriquez was unaware of the certification requirement prior to receiving the memorandum. The EMT training requirement had not been enforced in the two years Enriquez had been a volunteer firefighter.

On February 23, 2010 the City sent Enriquez a second memorandum stating that she would be suspended from active duty on March 1, 2010 if she did not provide the City with her certification and basic life support card by February 28. Enriquez, however, was unable to comply with this demand within such a short time period, because certification requires completion of an EMT training course, which typically is offered as a semester-long course at a city college. On March 5, 2010 the City sent Enriquez a letter by certified mail stating that she had been placed on suspension from active field duty and that she would be terminated if she did not provide the City with her EMT certification by June 1.

4

Enriquez attempted to enroll in the first available EMT training course upon learning of the certification requirement, but all of the classes were full and there was no waiting list. She "was slated" to take the EMT training course at Pasadena City College in the spring semester, which began in February and ended in June 2010. Although the course was full, she could "wait and 'add' the course a few days after it had begun and some spots became available."

At the end of February 2010 Enriquez learned that she was pregnant. Her doctor subsequently diagnosed her with placenta previa, a medical condition that threatens a woman's ability to carry a child to term successfully. Her doctor imposed severe movement restrictions and prohibited her from lifting, standing, exercising, going up stairs, and other strenuous movement. As a result, Enriquez had to postpone the EMT training course until after she had given birth to her child.

Based on the expected duration of her pregnancy and maternity leave, and the availability of an EMT training course, Enriquez did not anticipate that she would be able to return to work until the spring of 2011. On June 6, 2010 Enriquez notified the City of the necessity of an extended leave due to her pregnancy.

On August 5, 2010 the City sent Enriquez a letter informing her that she had been terminated as a SMFD volunteer firefighter as of June 1 because she had not obtained her EMT certification. Enriquez did not receive this letter until the end of August or the beginning of September, and it was in an envelope that had been torn open. The City's Personnel Action Form was signed August 30, and reflected Enriquez's voluntary separation effective June 1, 2010.

Enriquez immediately contacted the City and spoke to personnel analyst Miguel Hernandez. She explained her medical condition and that the physical restrictions prevented her from completing EMT training. She said she had already told the City she needed to extend her leave of absence due to her pregnancy, but the City had been unresponsive. Enriquez asked that the City reverse her termination, remove the termination letter from her personnel file, and keep her on indefinite or suspended leave

5

pending resolution of the issue. Hernandez said he would talk to the city manager about her request.

A short time later, Hernandez called Enriquez to let her know that the City had denied her request to reverse her termination. Enriquez requested that her record reflect a resignation so she would not have a "black mark" that would affect prospective future employment with other fire departments. Again, Hernandez said he would speak to the city manager. He later informed Enriquez that the City had denied her request.

On June 22, 2011 Enriquez returned to the firehouse to retrieve personal property she had left there. Several items were missing. Enriquez believed they had been given to other firefighters for their use.

On December 10, 2010 Enriquez filed a complaint with the U.S. Equal Employment Opportunity Commission (EEOC). On June 28, 2011 the EEOC dismissed the complaint on the ground that there was no employer-employee relationship and notified Enriquez of her right to sue.

On April 11, 2011 Enriquez also filed a complaint with the California Department of Fair Employment and Housing (DFEH). The DFEH issued Enriquez a right to sue notice, stating that it was closing its case because the EEOC would be responsible for conducting an investigation.

## PROCEDURAL BACKGROUND

Enriquez's operative first amended complaint contained 22 causes of action:

1. Wrongful termination-breach of contract, based on an implied employment contract created by the parties' conduct and breached by her termination without good cause based on Enriquez's gender and pregnancy;

2. Wrongful discharge in violation of public policy, based on the City's violation of the Fair Employment and Housing Act (FEHA, Gov. Code, § 12940 et seq.) in terminating Enriquez based on her gender, pregnancy and temporary disability;

6

3. Wrongful constructive termination in violation of public policy, alleging that even if Enriquez were not an employee subject to termination, the City's termination of her services based on her gender, pregnancy, and temporary disability resulted in a "black mark" on her record preventing her from being hired by another fire department;

4. Disparate treatment in violation of FEHA, based on Enriquez's gender, pregnancy, and temporary disability;

5. Disparate impact in violation of FEHA, based on the City's failure to prevent discrimination based on Enriquez's gender, pregnancy, and temporary disability;

6. Failure to take all reasonable steps to prevent sex discrimination in violation of FEHA;

7. Violation of the Family Rights Act (Gov. Code, § 12945 et seq.) by denying Enriquez's request for maternity leave;

8. Sex discrimination in violation of the federal Pregnancy Discrimination Act (42 U.S.C. §§ 2000e-2(a), 2000e(k));

9. Sex discrimination in employment by municipalities or local governmental entities in violation of the federal Civil Rights Act of 1871 (42 U.S.C. § 1983);

10. Sex discrimination in violation of the federal Civil Rights Act, title VII (42 U.S.C. § 2000e et seq.), disparate treatment;

11. Sex discrimination in violation of the federal Civil Rights Act, title VII, disparate impact;

12. Disability discrimination in violation of FEHA, disparate treatment, based on Enriquez's condition of placenta previa as a disability;

13. Disability discrimination, failure to provide reasonable accommodation in violation of FEHA, based on Enriquez's condition of placenta previa as a disability;

14. Failure to take all reasonable steps to prevent discrimination against disabled persons in violation of FEHA;

15. Disability discrimination in violation of the federal Americans With Disabilities Act (ADA, 42 U.S.C. § 12101 et seq.), disparate treatment;

16. Disability discrimination in violation of the ADA, disparate impact;

7

17. Disability discrimination in violation of the ADA, failure to provide reasonable accommodation;

18. Hostile work environment in violation of FEHA, conduct directed at Enriquez, based on harassment and wrongful termination due to her involuntary affiliation with a sexual harassment investigation;

19. Retaliation in violation of FEHA, based on the disciplinary notice which was issued in retaliation for her involuntary involvement in the sexual harassment investigation;

20. Breach of the implied covenant of good faith and fair dealing in the implied employment contract between Enriquez and the City through wrongful termination based on Enriquez's pregnancy and placenta previa;

21. Conversion of Enriquez's personal property left in the firehouse; and

22. Declaratory relief, seeking a declaration that the City is obligated to remove the termination notice from Enriquez's personnel file.

The City filed a demurrer. As to the employment-related causes of action (causes of action 1-20 and 22), the City argued that Enriquez did not receive "significant remuneration" for her services and therefore was not an employee and could not state causes of action for employment discrimination. The City also argued that because the allegations of the complaint showed that the City had advised her of the need to obtain EMT certification before she informed the City that she was pregnant, she could not state causes of action for discrimination based on her pregnancy (causes of action 1-18). The City also argued that Enriquez could not state federal disability discrimination causes of action because pregnancy is not a disability under the ADA (causes of action 15-17). The City further argued that Enriquez's failure to comply with the government claim filing statute (Gov. Code, § 945.4) barred her common law causes of action (causes of action 1-3, 20-22), that the City was immune from her causes of action for termination or retaliation in violation of public policy (causes of action 2-3), and that her failure to exhaust her administrative remedies barred her causes of action under FEHA and title VII (causes of action 4-8, 12-14, 17-19). As to Enriquez's contract-based causes of action

8

(causes of action 1, 20), the City argued that public employment is statutory, not contractual. Finally, the City argued that Enriquez's participation in the 2008 sexual harassment investigation was too attenuated to support a cause of action for retaliation (cause of action 19).

The trial court sustained the City's demurrer without leave to amend. Enriquez appeals.

## DISCUSSION

A. *Standard of Review*

On appeal from an order dismissing an action following the sustaining of a demurrer without leave to amend, we apply the de novo standard of review. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1470.) "[W]e review the trial court's sustaining of a demurrer without leave to amend de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law and applying the abuse of discretion standard in reviewing the trial court's denial of leave to amend." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1469.) We assume the truth of the properly pleaded factual allegations in the complaint but do not assume the truth of the contentions, deductions or conclusions of law. (*Acuna v. San Diego Gas & Electric Co.* (2013) 217 Cal.App.4th 1402, 1411; see also *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.) We first "'determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.'" (*Arce*, *supra*, at pp. 1470-1471.) "'As a general rule, if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend.'" (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 441.) "'Nevertheless, where the

9

nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result.'" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 401.) "'The burden is on [the appellant] to demonstrate the manner in which the complaint might be amended, and the appellate court must affirm the judgment if it is correct on any theory.'" (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 509.)[2]

B.      *Whether Enriquez Was an Employee for Purposes of Her Claims*

The leading case of *Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, like this case, involved a plaintiff who served as a volunteer for a municipality. The plaintiff in *Mendoza* sued under FEHA for wrongful termination in violation of public policy and disability discrimination. (*Id*. at pp. 628-629.) The trial court sustained the defendant's demurrer on the ground the plaintiff "was an uncompensated volunteer and not an 'employee' for purposes of imposition of liability for unlawful employment practices under FEHA." (*Id*. at p. 629.)

The "key legal issue" on appeal was whether the plaintiff was an employee and therefore protected from wrongful termination and employment discrimination under FEHA. (*Mendoza v. Town of Ross*, *supra*, 128 Cal.App.4th at p. 631; see *Shephard v. Loyola Marymount Univ.* (2002) 102 Cal.App.4th 837, 842 ["[i]n order to recover under the discrimination in employment provisions of the FEHA, the aggrieved plaintiff must be an employee"].) The court noted that FEHA does not clearly define who qualifies as an employee: "As observed in *Shephard*, *supra*, 102 Cal.App.4th at pages 867-847, the statutory definition of 'employee' found at [Government Code] section 12926,

---

[2]      We note that many of Enriquez's contentions on appeal focus on what she claims the "City failed to establish" in its demurrer. As stated above, we review the allegations of the complaint de novo and whether they state a cause of action, not what the City established or failed to establish in its demurrer.

subdivision (c), does not actually define who is an employee under the FEHA; it merely excludes persons employed by close relatives and those 'employed' by nonprofit sheltered workshops and rehabilitation facilities. Therefore, like the *Shephard* court, we conclude that the FEHA definitional provision is not particularly helpful in determining under what circumstances one may be considered to be an employee for purposes of the FEHA." (*Mendoza*, *supra*, at p. 632.)

The court found more helpful the definition of "employee" in regulations promulgated by the DFEH, which defines "an employee as '[a]ny individual under the direction and control of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written.' (Cal. Code Regs., tit. 2, § 7286.5, subd. (b).)" (*Mendoza v. Town of Ross*, *supra*, 128 Cal.App.4th at p. 632.) The court stated two reasons for rejecting the plaintiff's assertion that he was an employee under this definition "because he was 'appointed' to his volunteer position." (*Id*. at p. 633.) First, the controlling municipal ordinance gave the Town Council the exclusive authority to make employment appointments, and the Town Council did not appoint the plaintiff to his position. (*Ibid*.) Second, there could be no implied employment contract because public employment is governed by statute, not contract. (*Id*. at p. 634.)

The court also observed that "absent applicable California case law on the issue of whether the FEHA applies to volunteers, it is instructive to look to federal law. ""'Because the antidiscrimination objectives and relevant wording of title VII . . . [and other federal antidiscrimination statutes] are similar to those of the FEHA, California courts often look to federal decisions interpreting these statutes for assistance in interpreting the FEHA.'" [Citation.]' [Citations.] [¶] Title VII succinctly defines 'employee' as an 'individual employed by an employer.' (42 U.S.C. § 2000e(f).) The first prong of the title VII test in determining if someone is an employee requires the plaintiff to prove he or she was hired by the putative employer. [Citation.] To do so, the courts must look to '"the thirteen factors articulated by the Supreme Court in *Community for Creative Non-Violence v. Reid* [1989] 490 U.S. 730 [104 L.Ed.2d 811, 109 S.Ct. 2166] . . ." to determine whether an employment relationship exists. [Citation.]'

11

[Citation.]  However, to satisfy the hiring prong, a purported employee must establish the existence of remuneration, in some form, in exchange for work.  [Citation.]" (*Mendoza v. Town of Ross*, *supra*, 128 Cal.App.4th at pp. 635-636.)  Like the *Mendoza* court, courts in other jurisdictions have held that individuals who are not compensated for their services are not employees for purposes of title VII and similar statutes.  (See, e.g., *Juino v. Livingston Parish Fire Dist. No. 5* (5th Cir. 2013) 717 F.3d 431, 439 [adopting the "threshold-remuneration test" because it is "uniquely suited to assessing a plausible employment relationship within the volunteer context"]; *O'Connor v. Davis* (2d Cir. 1997) 126 F.3d 112, 115-116 [unpaid intern]; *Keller v. Niskayuna Consol. Fire Dist. 1* (N.D.N.Y. 1999) 51 F.Supp.2d 223, 232 [volunteer firefighters]; *City of Fort Calhoun v. Collins* (Neb. 1993) 500 N.W.2d 822, 826 [volunteer firefighters].)[3]

The *Mendoza* court did note that "substantial indirect compensation can satisfy the threshold requirement of remuneration for purposes of employee status under title VII.  If not direct salary, substantial benefits which are not merely incidental to the activity performed, such as health insurance, vacation or sick pay, are indicia of employment status.  [Citation.]  Thus, volunteer firefighters in *Pietras v. Board of Fire Com'rs of [Farmingville]* (2d Cir. 1999) 180 F.3d 468 were entitled to employee status, in part, based on their receipt of significant benefits, such as disability pensions, survivors' benefits, group life insurance, and scholarships for dependent children of deceased firefighters.  [Citation.]" (*Mendoza v. Town of Ross*, *supra*, 128 Cal.App.4th at p. 636, italics and fn. omitted; see *Haavistola v. Community Fire Co. of Rising Sun* (4th Cir. 1993) 6 F.3d 211, 221, citations & fn. omitted [factual issues precluded summary judgment on issue of whether the volunteer firefighter was an employee, where the volunteer received a "state-funded disability pension, . . . survivors' benefits for

---

[3]    In *Juino*, the Fifth Circuit joined the Second, Fourth, Eighth, Tenth, and Eleventh Circuits in adopting the "threshold-remuneration test," distinguishing the Sixth and Ninth Circuits' view that remuneration is a factor but not a necessary or dispositive one.  (*Juino v. Livingston Parish Fire Dist. No. 5*, *supra*, 717 F.3d at pp. 434-439.)

dependents, . . . scholarships for dependents upon disability or death, . . . bestowal of a state flag to family upon death in the line of duty, . . . benefits under the Federal Public Safety Officers' Benefits Act when on duty, . . . group life insurance, . . . tuition reimbursement for courses in emergency medical and fire service techniques, . . . coverage under Maryland's Workers Compensation Act, . . . tax-exemptions for unreimbursed travel expenses, . . . ability to purchase, without paying extra fees, a special commemorative registration plate for private vehicles, . . . and access to a method by which [the volunteer firefighter] may obtain certification as a paramedic"].)

By contrast, in *Keller v. Niskayuna Consol. Fire Dist. 1*, *supra*, 51 F.Supp.2d 223, the only benefit provided to the volunteer firefighters was participation in a service awards program, which conferred a financial benefit upon reaching a certain age if the volunteer accumulated a specified amount of service credit. (*Id*. at p. 231.) The court found that the service awards program did "not provide a guarantee of consideration for the work performed," because a volunteer might perform work but not accumulate the requisite amount of service credit and therefore receive nothing. (*Id*. at p. 232.) Because the volunteers did not receive compensation for their work, the court concluded that they were not employees. (*Ibid*.) Similarly, in *Juino*, the volunteer firefighter suing for sexual harassment received $78 for responding to 39 calls, "a life insurance policy, a uniform and badge, and emergency/first responders' training." (*Juino v. Livingston Parish Fire Dist. No. 5*, *supra*, 717 F.3d at p. 439.) The *Juino* court held that these benefits were "unlike the significant indirect benefits received by the volunteer firefighters in *Haavistola* and *Pietras*," and that "as a matter of law" the plaintiff "was not an 'employee' for purposes of Title VII because she has failed to make a threshold showing of remuneration." (*Id*. at pp. 439, 440.)

Enriquez suggests that her receipt of workers' compensation benefits was sufficient to give her employee status. She relies on a statement and example from the EEOC Compliance Manual: "Volunteers usually are not protected 'employees.' However, an individual may be considered an employee of a particular entity if, as a result of volunteer service, s/he receives benefits such as a pension, group life insurance,

13

workers' compensation, and access to professional certification, even if the benefits are provided by a third party. The benefits constitute 'significant remuneration' rather than merely the 'inconsequential incidents of an otherwise gratuitous relationship.'" (http://www.eeoc.gov/policy/docs/threshold.html#2-III-A-1-c, fns. omitted [as of Oct. 16, 2013].) The EEOC then gives an example, which according to Enriquez illustrates "a situation very similar to" her case: "CP was terminated from her position as a probationary volunteer firefighter after she failed an agility test. She alleges that the test has a disparate impact on women. Respondent claims that CP was not an employee, and, therefore, not protected by Title VII. State X provides volunteer firefighters up to $400/month in state retirement benefits (after five years of service); death and survivors benefits; group life insurance; disability and rehabilitation benefits; health care benefits; and tuition reimbursement for courses in emergency medical and fire service techniques. These benefits are 'significant remuneration' sufficient to create an employment relationship between CP and Respondent." (http://www.eeoc.gov/policy/docs/threshold.html#2-III-A-1-c [as of Oct. 16, 2013].)[4]

Enriquez's situation is very different from that of the volunteer firefighter in the EEOC example. Enriquez did not receive any retirement, health care, insurance, tuition reimbursement or other similar benefits that would support a finding that she was an employee. (See *Mendoza v. Town of Ross*, *supra*, 128 Cal.App.4th at p. 636; *Juino v. Livingston Parish Fire Dist. No. 5*, *supra*, 717 F.3d at p. 439; *Pietras v. Board of Fire Com'rs of Farmingville*, *supra*, 180 F.3d at p. 473.)

---

**4**     EEOC guidelines are not binding authority on California courts when interpreting FEHA. They may be persuasive, however, when interpreting similar state antidiscrimination provisions. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 165.) "'"[W]hile not controlling upon the courts by reason of their authority, [the EEOC guidelines] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance'" [citation].'" (*Ibid.*, quoting from *Meritor Savings Bank v. Vinson* (1986) 477 U.S. 57, 65 [106 S.Ct. 2399, 91 L.Ed.2d 49].)

14

Moreover, the court in *Estrada v. City of Los Angeles* (2013) 218 Cal.App.4th 143, which involved a volunteer reserve police officer, recently rejected the argument that receipt of workers' compensation benefits confers employee status. In *Estrada*, the City of Los Angeles included volunteer reserve police officers within the definition of employee for purposes of workers' compensation coverage. (*Id*. at p. 155.) The court stated: "Clearly, the City has made a policy decision to extend such benefits to volunteer[] reserve officers, who serve gratuitously and put themselves in harm's way to protect the community. [¶] However, the consequence of this policy decision by the City is not to convert these uncompensated volunteers into municipal employees for all purposes. The fact the City provides volunteer reserve officers with workers' compensation benefits if they sustain industrial injuries does not change the fact they serve without remuneration. The City's workers' compensation benefits, similar to the recurring $50 reimbursement for a volunteer's out-of-pocket expenses, simply serve to make a volunteer whole in the event the volunteer were to sustain injury while performing his or her duties. Irrespective of the significant value of workers' compensation benefits, the purpose of workers' compensation is 'to compensate for losses resulting from the risks to which the fact of employment in the industry exposes the employee.' [Citation.] The fact the City ensures that unpaid volunteers such as [the plaintiff] are compensated for industrial injuries does not mean that such persons are deemed employees for purposes of the FEHA." (*Ibid*.)[5]

Enriquez also relies on a provision in the EEOC Compliance Manual that states: "A volunteer may also be covered by the EEO statutes if the volunteer work is required for regular employment or regularly leads to regular employment with the same entity.

---

[5] Enriquez attempts to avoid the holding of *Estrada* by distinguishing her situation from that of the plaintiff in *Estrada* by pointing out that the City of Los Angeles has a municipal code while the City of Sierra Madre does not. This distinction does not have any bearing on the holding of *Estrada* that the receipt of workers' compensation benefits alone is not sufficient remuneration to give a volunteer the status of an employee for purposes of FEHA or other statutes barring discrimination against employees.

15

In such situations, discrimination by the respondent operates to deny the charging party an employment opportunity."  The EEOC gives this example:  "CP is a volunteer counselor with the Respondent, a public interest organization, and alleges that she was subjected to sexual harassment by her supervisor and coworkers.  Respondent maintains that CP is not its employee, and, therefore, not covered by Title VII.  While volunteer service is not a prerequisite to employment, former volunteers are given preferential treatment when competing for vacancies against applicants who have not volunteered with Respondent.  Most of Respondent's regular, paid counselors initially performed volunteer work for Respondent.  In this case, volunteer service regularly leads to employment with Respondent.  Therefore, CP is protected by the EEO statutes." (http://www.eeoc.gov/policy/docs/threshold.html#2-III-A-1-c, fn. omitted [as of Oct. 16, 2013].)

Enriquez alleges that "employment as a volunteer firefighter with the SMFD regularly led to employment as a daytime salaried engineer in the SMFD," and that "SMFD volunteer firefighters received preferential consideration for hiring as daytime salaried engineers when a vacancy occurred in the SMFD."  Enriquez, however, has not provided any case authority in support of her contention that a preference afforded a volunteer in applying for a compensated employment position qualifies as "substantial indirect compensation" for purposes of qualifying a volunteer for FEHA or title VII protection.  Nor has she cited a case that relied on this provision of the EEOC Compliance Manual to hold that "regularly leading to regular employment" can elevate a plaintiff from volunteer to employee status for purposes of the antidiscrimination laws. We have not found any such cases.  A volunteer subject to discrimination might be able to state a claim for discriminatory hiring practices.  (See Gov. Code § 12940, subd. (a); *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 218 [title VII makes it unlawful for any employer to refuse to hire an individual because of sex]; *Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 265 [FEHA prohibition against discrimination extends to hiring]; *Vickery v. Minooka Volunteer Fire Dept.* (N.D.Ill. 1997) 990 F.Supp. 995, 1000 [volunteer stated a claim for sex discrimination against fire department that "refused to

16

hire her as a paid employee because she was a woman"].) Enriquez, however, never asserted such a claim among her 22 causes of action, nor has she ever requested, in the trial court or this court, leave to amend to allege a claim for discrimination in hiring. In any event, even if the possibility of volunteer work leading to regular employment or preferential consideration in hiring could qualify as substantial compensation, Enriquez must still plead facts sufficient to state a cause of action. As we explain below, she failed to do so.

C.       *Whether Enriquez Pleaded Facts Sufficient To State Causes of Action for Discrimination Based on Gender, Pregnancy, or Disability*

Enriquez argues that "[t]he sex, pregnancy and disability discrimination occurred when City terminated [Enriquez] on some date uncertain following [Enriquez's] notifying City of her pregnancy." Enriquez's chronology, however, precludes these claims. The City notified Enriquez on March 5, 2010 that it would terminate her as of June 1, 2010 if she did not obtain EMT certification. Enriquez did not notify the City of her need for an extended leave of absence until June 6, 2010, after the specified termination date. Enriquez cites no authority to support a claim of discrimination based on the failure to change or rescind a non-discriminatory decision to terminate an employee based on the employee's *subsequent* notification to the employer that she was disabled.

Moreover, the law is to the contrary. In order to prove discrimination, the employee must show that the employer was aware of the basis for the employee's claim prior to making the decision to take adverse employment action. In *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, which involved a claim of disability discrimination, the court stated: "Evidence that a decision maker learned of a plaintiff's disability *after* deciding to take adverse employment action . . . is irrelevant to determining whether the decision maker acted from a discriminatory animus. (*Brundage v. Hahn* [(1997)] 57 Cal.App.4th [228,] 236-237 [decision maker must be aware of disability 'when the adverse employment decision was made']; see also *Hedberg v. Indiana Bell Telephone Co., Inc.* [(7th Cir. 1995)] 47 F.3d [928,] 931-932 [no

17

discrimination when decision maker was informed of plaintiff's disability after making decision to discharge him].)" (*Id.* at p. 1251; see *Geraci v. Moody-Tottrup, Intern., Inc.* (3rd Cir. 1996) 82 F.3d 578, 582 [no prima facie case of pregnancy discrimination where evidence showed defendant decided to lay plaintiff off before it knew of her pregnancy].)

Enriquez has failed to meet her burden of demonstrating that the trial court erred in sustaining the City's demurrer to her causes of action based on gender, pregnancy, and disability discrimination under state and federal law (causes of action 4-17). Enriquez also has not met her burden of demonstrating how she could amend her complaint to state these causes of action. Therefore, the trial court did not abuse its discretion in sustaining the City's demurrer to these causes of action without leave to amend.

D.      *Failure To File a Government Claim*

Enriquez acknowledges that she failed to comply with the Government Claims Act, which requires that the plaintiff file a claim with the state before a "suit for money or damages may be brought against a public entity." (Gov. Code, § 945.4; *Crow v. State of California* (1990) 222 Cal.App.3d 192, 199.) She states, however, that this was "purely out of ignorance, mistake or inadvertence, and perpetuated by City," which failed to notify her that she was required to file a tort claim before bringing suit.

Enriquez fails to cite any authority to suggest that her ignorance and the City's failure to inform her of the requirements of the Government Claims Act excuse her noncompliance. Legal arguments in an appellate brief must be supported by citations to appropriate legal authority. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [a party must "support each point [in his or her brief] by argument and, if possible, by citation to authority"].) A conclusory argument devoid of citation to legal authority is insufficient and may be disregarded. (*Rojas v. Platinum Auto Group, Inc.* (2013) 212 Cal.App.4th 997, 1000, fn. 3; *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384.) Enriquez's argument is insufficient, and she has failed to meet her burden of demonstrating error. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["[t]he absence of cogent legal argument or citation to authority allows this court to treat the contentions

18

as [forfeited]"].)  In any event, the law is to the contrary.  Enriquez's "ignorance, mistake or inadvertence" and the City's failure to inform her of the claim-filing requirements do not entitle her to relief.  (See *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1778 ["mistake of law based solely on ignorance of the . . . claim requirement is not enough" to obtain relief from the requirement under Government Code section 946.6]; *Tyus v. City of Los Angeles* (1977) 74 Cal.App.3d 667, 672-673 [board of police commissioners and mayor, to whom appellant complained of police misconduct, "were under no duty to advise appellant of the claims statutes"].)

Enriquez's failure to file a tort claim bars her common law causes of action against the City (causes of action 1-3, 20-22).  The trial court did not abuse its discretion in sustaining the City's demurrer without leave to amend as to these causes of action.


E.      *Exhaustion of Administrative Remedies*

Enriquez's remaining causes of action are for hostile work environment and retaliation in violation of FEHA (causes of action 18-19).  The City demurred to these causes of action on the grounds that Enriquez had failed to exhaust her administrative remedies and that the connection between any protected activity and employment action was too temporally attenuated.

FEHA requires exhaustion of administrative remedies prior to the filing of a complaint.  Under FEHA "the employee must file an administrative complaint with DFEH identifying the conduct alleged to violate FEHA.  At the conclusion of the administrative process, which may or may not include an investigation or administrative remedies, DFEH generally issues the employee a right-to-sue notice.  [Citation.]"  (*Wills v. Superior Court*, *supra*, 195 Cal.App.4th at p. 153; see Gov. Code § 12960.)  The scope of any subsequent civil action under FEHA is limited to claims of discrimination raised by the complaint.  (See *Wills*, *supra*, at pp. 154-155 ["""The administrative exhaustion requirement is satisfied if the allegations of the civil action are within the scope of the [DFEH] charge, any [DFEH] investigation actually completed, or any investigation that might reasonably have been expected to grow out of the charge."'  [Citation.]"].)

19

Enriquez attached to her first amended complaint copies of her right to sue letters and a copy of her EEOC intake questionnaire, but not copies of the actual complaints to the DFEH and EEOC. According to Enriquez, she filed her complaint with the DFEH online and was unable to obtain a copy of it. She does not specify what was in that complaint. She merely argues that because she received right to sue letters, it is clear she made complaints to both agencies. That is not enough to determine that she exhausted her administrative remedies.

The only document that explains the nature of Enriquez's complaint, the EEOC intake questionnaire, does not support a finding that she claimed sexual harassment based on a hostile work environment in violation of FEHA (*Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 348) or retaliation for opposing a practice forbidden under FEHA (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69). Enriquez claimed in her intake questionnaire that she was disciplined for missing her interview with the investigator and for discussing the investigation with coworkers. She stated: "I believe that my termination from the SMFD as well as the City Manager's refusal to reinstate my leave are a direct result of the earlier conflict regarding the 2008 employee misconduct investigation, and that the City was waiting for an opportunity to fire me, which it found and took." There is nothing in this statement that suggests Enriquez was claiming sexual harassment based on a hostile work environment in violation of FEHA or retaliation for opposing a practice forbidden under FEHA.

Enriquez does not cite any authority to support her position that the right to sue letters alone were sufficient to establish exhaustion of administrative remedies. Nor does she demonstrate in what manner she could amend her complaint to allege exhaustion of administrative remedies. Therefore, she has failed to meet her burden of demonstrating that the trial court erred in sustaining the City's demurrer to her harassment and retaliation causes of action or abused its discretion in denying her leave to amend those causes of action.

F.     *Additional Bases for Sustaining the Demurrer Without Leave To Amend*

1.     Disability Discrimination

Enriquez argues that the City failed to establish that she had pleaded insufficient facts to state a cause of action for disability discrimination because the City based its demurrer on the fact that pregnancy is not a disability under the ADA, while Enriquez based her cause of action on her placenta previa.  As discussed above, however, Enriquez did not notify the City of her condition, pregnancy or placenta previa, until *after* the City had made the decision to terminate her.  Therefore, she cannot state a cause of action for discrimination based on disability.  (See *Avila v. Continental Airlines, Inc.*, *supra*, 165 Cal.App.4th at p. 1251; *Taylor v. Principal Financial Group, Inc.* (5th Cir. 1996) 93 F.3d 155, 163-164 [claim of disability discrimination requires that employer be aware of disability and the plaintiff's limitations resulting from the disability].)

2.     Immunity

Enriquez also argues that the City failed to establish that it had immunity from liability for her common law causes of action for wrongful termination (causes of action 2-3).  Enriquez acknowledges that the court in *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 898-900 held that public employers are not subject to common law claims for wrongful termination in violation of public policy.  She claims, however, that her causes of action fall within an exception to this rule.

The *Miklosy* court held:  "The Government Claims Act ([Gov. Code,] § 810 et seq.) establishes the limits of common law liability for public entities, stating:  'Except as otherwise provided *by statute*:  [¶]  (a)  A public entity is *not liable* for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.'  ([Gov. Code,] § 815, subd. (a), italics added.)  The Legislative Committee Comment to [Government Code] section 815 states:  'This section *abolishes all common law or judicially declared forms of liability for public entities*, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. . . .'  (Legis. Com. com., 32 West's Ann. Gov. Code (1995) foll. § 815,

21

p. 167, italics added.)" (*Miklosy v. Regents of University of California*, *supra*, 44 Cal.4th at p. 899.)

Enriquez argues that the "City itself states that these Causes of Action are rooted in Government Code [section] 12940 regarding discrimination and the California Constitution. Thus, because the wrongful termination Causes of Action are supported by statute, they are not pursuant to common law, and City is not immune to the Causes of Action for wrongful termination." (Italics omitted.) To the extent Enriquez is claiming that her causes of action for wrongful termination are statutory, brought pursuant to Government Code section 12940 (i.e., FEHA), they are barred for the reasons stated above. To the extent Enriquez is claiming that the California Constitution may impose liability on the City, her failure to identify a specific constitutional provision or cite relevant supporting authority forfeits such a claim. (See *Rojas v. Platinum Auto Group, Inc.*, *supra*, 212 Cal.App.4th at p. 1000, fn. 3; *In re Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 830; *Dabney v. Dabney*, *supra*, 104 Cal.App.4th at p. 384.)


### 3. Breach of Contract/Implied Covenant

Enriquez also argues that the City failed to establish that she did not plead facts sufficient to state a cause of action for breach of an implied contract or covenant (causes of action 1, 20). However, "it is well settled in California that public employment is not held by contract but by statute . . . ." (*Miller v. State of California* (1977) 18 Cal.3d 808, 813; accord, *Mendoza v. Town of Ross*, *supra*, 128 Cal.App.4th at p. 634.) Therefore, "[a] California public employee . . . cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing arising out of the public employment relationship. [Citations.] The public employee's remedies are limited to those provided by statute or ordinance. [Citation.]" (*Lachtman v. Regents of University of California* (2007) 158 Cal.App.4th 187, 207; accord, *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 23-24; *Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 164-165.) Enriquez cites no authority to the contrary.

22

4. Sex Discrimination

Enriquez argues that the trial court erroneously sustained the City's demurrer to her cause of action for sex discrimination in employment by municipalities or local governmental agencies under the Civil Rights Act of 1871 (cause of action 9), because she sufficiently alleged "that her termination was based on an official policy of City, which was the policy requiring the EMT Certification to be completed by June 1, 2010." Enriquez, however, did not state claim for violation of her civil rights under the Civil Rights Act of 1871, 42 United States Code section 1983.

A municipality can be liable under 42 United States Code section 1983 only where the municipality causes a violation of the plaintiff's federal constitutional rights. (*Canton v. Harris* (1989) 489 U.S. 378, 385 [109 S.Ct. 1197, 103 L.Ed.2d 412.) This occurs "'"when the "execution of the government's policy or custom . . . inflicts the injury . . . ."'" (*Ibid.*) There must be a direct causal connection between the municipality's policy or custom and the violation. (*Ibid.*) In order to state a claim under 42 United States Code section 1983, a plaintiff must allege that the defendant deprived him or her of a federal right under color of state law. (*Rosales v. City of Los Angeles* (2000) 82 Cal.App.4th 419, 430.) The plaintiff must identify the federal right the defendant allegedly violated. (*Id.* at pp. 430-431; *Weaver v. State of California* (1998) 63 Cal.App.4th 188, 203.) In addition the plaintiff must allege that the violation resulted from "'official policy as the moving force of the [claimed] constitutional violation . . . .' [Citation.]" (*Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, 1296, quoting from *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 694 [98 S.Ct. 2018, 56 L.Ed.2d 611].) A facially neutral policy will not generally constitute a civil rights violation. (See *Mayfield v. Texas Dept. of Criminal Justice* (5th Cir. 2008) 529 F.3d 599, 608; *City of Hialeah, Fla. v. Rojas* (11th Cir. 2002) 311 F.3d 1096, 1103.) Only if the policy was enacted because of its disparate impact on a protected group can it serve as the basis of a claim under section 1983 of title 42 of the United States Code. (See *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 677 [129 S.Ct. 1937, 173 L.Ed.2d 868] ["to state a claim based on a violation

23

of a clearly established right, [appellant] must plead sufficient factual matter to show that [respondent] adopted and implemented the . . . policies at issue not for a neutral . . . reason but for the purpose of discriminating" on a prohibited basis]; *Harman*, *supra*, at p. 1289 ["plaintiff must show that the municipality's action was motivated by a 'discriminatory intent or purpose'"]; *Graham v. City of Biggs* (1979) 96 Cal.App.3d 250, 254 [policy motivated by "'invidiously discriminatory animus'"]; cf. *Horner v. Kentucky High School Athletic Ass'n* (6th Cir. 1994) 43 F.3d 265, 276 [title IX claim].)

Enriquez does not specify which federal right the City violated by requiring her to obtain EMT certification by June 1, 2010. Moreover, in light of the fact that the City set this "policy" before learning of Enriquez's pregnancy and placenta previa, Enriquez has not shown how she can allege that the City enacted the policy for the purpose of discrimination in violation of federal law. In any event, Enriquez cites no authority in support of her argument, again forfeiting it.

### 5.    Retaliation

Enriquez contends finally that the City failed to establish that her claim of retaliation for engaging in protected activity (cause of action 19) was temporally unrelated to her wrongful termination. In support of her contention, she points to allegations that she received a disciplinary notice on August 2, 2008, and responded on August 22, 2008 "that she was suffering from a hostile work environment and was the target of harassment." As a result of the disciplinary notice, Enriquez's employment with the SMPD, scheduled to begin on August 4, 2008, was deferred for six months and then indefinitely. Enriquez continued to work for the SMFD for over a year, until the end of 2009, when the SMFD informed her that it was placing her on leave, and was not terminated until June 1, 2010.

To establish a prima facie case of unlawful retaliation, a plaintiff must demonstrate that he or she engaged in a protected activity, the employer subjected him or her to an adverse employment action, and there was a causal link between the protected activity and the employer's action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th

24

1028, 1042; *Morgan v. Regents of University of California*, *supra*, 88 Cal.App.4th at p. 69.)  "'The retaliatory motive is "proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter." [Citation.]  "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" [Citation.]' [Citation.]" (*Morgan*, *supra*, at pp. 69-70; accord, *California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1018.)  In order to plead a cause of action for retaliation, the plaintiff must allege that the adverse employment action "was in close temporal proximity to the protected activity." (*Gee v. Pacheco* (10th Cir. 2010) 627 F.3d 1178, 1189; see *Clark County School Dist. v. Breeden* (2001) 532 U.S. 268, 273 [121 S.Ct 1508, 149 L.Ed.2d 509]; *Morgan*, *supra*, at p. 69.)

In *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102 there were nine months between the protected activity and the employer's action.  The court noted that "the case law suggests the employer's action must follow '"within a relatively short time,"'" and that the plaintiff cited "no case holding that a nine-month hiatus between protected conduct [and adverse action] qualifies as a 'relatively short time.'" (*Id.* at p. 1110, fn. 6.)  By contrast, in *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1235, disapproved on another ground in *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1173-1174, the court found a causal link where the plaintiff alleged the retaliation took place or intensified "'shortly after' 'each act of opposition'"  Other cases have held that periods of many months between protected activity and adverse action are too long to establish a causal link. (See, e.g., *MacKenzie v. City and County of Denver* (10th Cir. 2005) 414 F.3d 1266, 1279-1280 [five to seven months]; *Richmond v. ONEOK, Inc.* (10th Cir. 1997) 120 F.3d 205, 209 [three months is too long]; *Kouakou v. Fideliscare New York* (S.D.N.Y. 2012) 920 F.Supp.2d 391, 401, fn. omitted [plaintiff's allegation that the adverse employment

action occurred "approximately four months following his alleged complaint about his co-workers [was] well outside of the acceptable outer limits for demonstrating a temporal proximity to the protected activity"].)

Enriquez's complaint fails to allege the temporal proximity necessary to state a cause of action for retaliation. She cites no authority in support of her contention and, in particular, no authority finding a causal link between protected activity and adverse action occurring more than a year later.[6]

## DISPOSITION

The order of dismissal is affirmed. The City is awarded its costs on appeal.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

WOODS, J.

---

[6] Enriquez does not challenge the dismissal of her conversion cause of action.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.